**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

KLAPEC TRUCKING CO.,               )
                                       )
        Plaintiff,              )
                                       )
v.                                  )
                                     )
SHENANDOAH TOWING, LLC,     )    C.A. No.  5:22-cv-00012
                                     )
      **Serve: Jeremy D. McCleary, Esq.,**   )
            **Registered Agent**          )    **JURY TRIAL DEMANDED**
            **147 N. Main Street**        )
            **Woodstock, VA 22664**     )
                                     )
        Defendant.           )
_____)

## COMPLAINT

The Plaintiff, Klapec Trucking Company ("Klapec"), by counsel, states the following in Complaint against the Defendant, Shenandoah Towing, LLC ("Shenandoah" or the "Defendant," and collectively with Klapec, the "Parties"). For the reasons set forth herein, Klapec respectfully prays that the Court enter judgment in its favor, and against Shenandoah.

### JURISDICTION

1.    The Court has original jurisdiction in this action under Title 28, Section 1332 of the United States Code, as this lawsuit is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### PARTIES

2.    Klapec is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Oil City, Pennsylvania. Klapec is therefore a Pennsylvania citizen, and it is not a citizen of any other state.

3.      Shenandoah is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, whose principal place of business is located in Woodstock, Virginia.  Upon information and belief, all of Shenandoah's members are domiciled in Virginia. Shenandoah is therefore a Virginia citizen, and it is not a citizen of Pennsylvania.

<u>VENUE</u>

4.      The venue of this action is properly predicated upon Title 28, Section 1391(a) of the United States Code, in that jurisdiction is founded on diversity of citizenship and this action is brought within the judicial district and division in which the Defendant resides, where the Defendant does business, and/or in which a substantial part of the events or omissions giving rise to the claim(s) alleged herein occurred.

<u>NATURE OF THE ACTION</u>

5.      The matters at issue in this litigation relate to the Parties' dispute over their respective rights and duties under Code of Virginia sections 46.2-644.01 and 46.2-1212.1, in connection with Shenandoah's towing and storage of a tractor-and-trailer owned and operated by Klapec, and laden with cargo being shipped by one of Klapec's customers; Shenandoah's erroneous assertion of an invalid lien against the tractor, trailer, and cargo; Shenandoah's wrongful possession and withholding of Klapec's property; Shenandoah's illegal conversion of Klapec's property, damaging Klapec; and Shenandoah's breach of the implied covenant of good faith and fair dealing in the putative contract on which Shenandoah's wrongful charges are based.

6.      Klapec therefore seeks judgment in its favor for Shenandoah's wrongful conversion of Klapec's property or, alternatively, for Shenandoah's breach of the implied covenant of good faith and fair dealing.

7.      In the further alternative, Klapec seeks declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and Title 28, Section 2201 of the United States Code, to declare

the rights and other legal relations surrounding questions of actual controversy that presently exist between and among Klapec and Shenandoah, in order to avoid the future accrual of damages to Klapec.  *See* 28 U.S.C. § 2201; Fed. R. Civ. P. 57.

STATEMENT OF FACTS

8.      Klapec is a trucking company that owns and operates tractor-trailer rigs, and ships freight therein for customers.

9.      On January 24, 2022, Klapec's employee, Robert Nichols, was operating Klapec's 2019 Freightliner Cascadia tractor, vehicle identification number 3AKJHHDVXKSKH9596, Klapec unit number 375 (the "Tractor"), hauling a trailer, vehicle identification number 1GRAA0629JD100270, Klapec unit number 606 (the "Trailer," and collectively with the Tractor, the "Truck") laden with a cargo of plastic film skids bound for Allentown, Pennsylvania, on Interstate Highway 81, passing through Shenandoah County, Virginia.

10.     As Mr. Nichols was driving the Truck on I-81 at or near mile marker 264.8, he lost control of the Truck and it rolled over into the median, where it came to rest (the "Collision").

11.     As a result of the Collision, the Virginia State Police were dispatched to the scene.

12.     The Truck was not stopped in any travel lanes on I-81, and the Truck was not impeding or affecting the flow of traffic on I-81.

13.     The responding police officer requested a towing and recovery service to clear the scene under the Virginia Department of Transportation's Towing and Recovery Incentive Program ("TRIP").

14.     Shenandoah was then called to the scene of the Collision through TRIP.

15.     Klapec did not contact Shenandoah or summon Shenandoah to the scene of the Collision.

16.     Klapec did not request Shenandoah's services in connection with the Collision.

17.     Shenandoah arrived at the scene of the Collision on January 24, 2022, separated the Tractor and the Trailer for towing, cleaned a minor oil spill caused by the Collision, and towed the Tractor to a storage lot approximately 6.5 miles from the scene of the Collision.

18.     Shenandoah's returned to the scene the following day, January 25, 2022, to perform towing and clearance operations on the Trailer.

19.     Following completion of its operations at the scene, Shenandoah presented Klapec with an invoice for towing and storage services in the total amount of $77,740.00, invoice number 22-00126 (the "Invoice").

20.     A true copy of the Invoice is appended hereto as Exhibit 1.

21.     The Invoice includes what is described as a "10% adm fee" in the amount of $7,040.00. (Exh. 1.)

22.     The Invoice also states line-item charges for "Rotator #1 set up fee" and "Rotator #2 set up fee" in the amounts of $2,000.00 and $1,500.00, respectively. (Exh. 1.)

23.     The Invoice also includes line-item charges for "scene lighting" on January 24, 2022, and "portable lighting" on January 25, 2022, at $2000.00 and $4,000.00, respectively. (Exh. 1.)

24.     The Invoice sets forth additional line-item charges for "on scene wireless communications" on both January 24, 2022, and January 25, 2022, in the amounts of $500.00 each day. (Exh. 1.)

25.     Also included in the Invoice are line-item charges for the presence of a "superviser" [*sic*] on January 24, 2022, and January 25, 2022, in the amounts of $1,000.00 and $2,000.00, respectively.

26.     All of these charges represent overhead costs that are not chargeable to Klapec under Virginia law.

27.     The Invoice also states storage charges that are not recoverable from Klapec under Virginia law.

28.     The storage charges continue to accrue, though as a matter of law they are not collectible.

29.     The remaining charges stated in the Invoice are either excessive in terms of the number of hours billed, the amount of equipment deployed, and/or the necessity for the services identified.

30.     On February 4, 2022, Klapec, by counsel, contacted Shenandoah and voiced its disagreement with several items in the invoice, including, without limitation, "adm fee," the on-scene lighting charges, wireless communication charges, and supervisor overhead.

31.     The Parties were unable to resolve their disagreement over the invoice, and on February 7, 2022, and again February 8, 2022, Klapec, by counsel, wrote to Shenandoah calling upon it to adjust its charges to a reasonable amount, or to release the Truck and cargo.

32.     Shenandoah did not respond until February 9, 2022, when it retained counsel who contacted Klapec's counsel, and requested further time to consider the matter.

33.     To date, the Parties have remained at an impasse regarding Shenandoah's possession of the Truck and the cargo and Shenandoah's charges for the Tow.

34.     To the extent that Shenandoah claims a statutory lien on the Truck and its cargo, Shenandoah could also seek to auction off the Tractor and cargo pursuant to statute, resulting in further loss and damages to Klapec.

35.     Based upon Shenandoah's erroneous claim of a right to hold the Truck and its cargo in Shenandoah's possession as leverage to force Klapec to pay the unreasonable and excessive amounts set forth in the Invoice, Klapec is being damaged on a daily basis and will continue to be so damaged unless judgment is entered in Klapec's favor in this action.

<u>FIRST CAUSE OF ACTION – CONVERSION OF THE TRUCK</u>

36.     Klapec hereby restates the allegations set forth in Paragraphs 1-35 of this Complaint as if those Paragraphs were re-alleged verbatim here.

37.     At all times relevant, including on the date of the Collision, Klapec owned the Truck, and was in lawful possession of the Truck's cargo.

38.     To the extent that Shenandoah claims a lien against the Truck and its cargo, such a claim can only be predicated upon Code of Virginia section 46.2-644.01, which provides, in part, that "[e]very keeper of a garage and every person keeping any vehicles shall have a lien upon such vehicles for the amount that may be due him for the towing, storage, recovery, and care thereof, until such amount is paid."  Va. Code Ann. § 46.2-644.01.A.

39.     Shenandoah's claim to hold a lien against the Truck and its cargo, if any, must further be predicated upon Code of Virginia section 46.2-1212.1, which provides, in part, that "[a]s a result of a motor vehicle accident or incident, the Department of State Police . . . may, without the consent of the owner or carrier, remove . . . [a] vehicle, cargo, or other personal property that has been (i) damaged or spilled within the right-of-way or any portion of a roadway in the primary state highway system and (ii) is blocking the roadway or may otherwise be endangering public safety. . . ."  Va. Code Ann. § 46.2-1212.1.A.

40.     The statute further provides that the "owner and carrier, if any, of the vehicle, cargo, or personal property removed or disposed of under the authority of this section shall reimburse . . . individuals or entities acting pursuant to a contract with the Department of Transportation for, or

that includes, traffic incident management services as defined in [Code of Virginia section] 46.2-920.1 . . . for all costs incurred in the removal and subsequent disposition of such property." Va. Code Ann. § 46.2-1212.1.C.

41.    Code of Virginia section 46.2-920.1 provides, in part, that "[f]or purposes of this chapter and Chapter 12 (§ 46.2-1200 et seq.) . . . 'traffic incident management services' means services provided in response to any event or situation on or affecting the Department of Transportation right-of-way that impedes traffic or creates a temporary safety hazard." Va. Code Ann. § 46.2-920.1.B.

42.    Shenandoah purports to have operated in connection with the Collision under a contract with the Department of Transportation for, or that includes, traffic incident management services as defined in Code of Virginia section 46.2-920.1.

43.    As Klapec did not request Shenandoah's services in connection with the Collision, Shenandoah could only have been authorized to tow away the Truck pursuant to Virginia Code section 46.2-1212.1, if that statute applies.

44.    Shenandoah is only entitled to payment for its services in connection with the Collision under Code section 46.2-1212.1 if the State Police were authorized under that statute to engage Shenandoah's services.

45.    Similarly, Shenandoah only holds a lien against the Truck pursuant to Virginia Code 46.2-644.01 if Shenandoah was legally authorized to tow the Truck, and keep it in storage.

46.    As provided under Virginia Code section 46.2-1212.1, the State Police were only authorized to summon Shenandoah to tow away the Truck and its cargo if they were "(i) damaged or spilled within the right-of-way or any portion of a roadway in the primary state highway system

*and* (ii) . . . blocking the roadway or . . . otherwise . . . endangering public safety. . . ." Va. Code Ann. § 46.2-1212.1.A (emph. supp'd).

47.     Neither the Truck nor its cargo were blocking or otherwise impeding the roadway on I-81 as a result of the Collision.

48.     Neither the Truck nor its cargo endangered public safety as a result of the Collision.

49.     Because the Collision did not cause the Truck or its cargo to block the highway or endanger public safety, the State Police lacked authority under Code section 46.2-1212.1 to summon Shenandoah to tow away the Truck.

50.     As the State Police lacked authority to engage Shenandoah's services in connection with the Collision, Shenandoah was not authorized to tow away the Truck.

51.     As the State Police lacked authority to engage Shenandoah's services in connection with the Collision, Shenandoah is not entitled under Virginia Code section 46.2-1212.1 to receive payment for those services.

52.     As the State Police lacked authority to engage Shenandoah's services in connection with the Collision, Shenandoah does not hold a valid lien against the Truck under Virginia Code section 46.2-644.01.

53.     As a towing company registered with the TRIP program, Shenandoah is required to undergo certification that it is familiar with the requirements of state law applicable to towing and recovery operations under the TRIP program.

54.     Accordingly, Shenandoah is aware, or reasonably should be aware due to the requirements of its certification for the TRIP program, of when the TRIP criteria are satisfied by a collision or a request for towing and recovery services.

55.    Having such knowledge – either actual or constructive – Shenandoah could only have known that the Collision did not meet the TRIP criteria.

56.    Because Shenandoah knew, or reasonably should have known, that the Collision did not meet the TRIP criteria, Shenandoah's decision to take possession of the Truck and retain possession of the Truck constitute the wrongful exercise of dominion and control over Klapec's property.

57.    Shenandoah's wrongful exercise of dominion and control over the Truck has deprived Klapec of the Truck's use.

58.    Shenandoah has wrongfully exercised dominion and control over the Truck out of malice, recklessness, and/or willful and wanton negligence.

59.    Furthermore, even assuming *arguendo* that the conditions for creating a lien under Code section 46.2-644.01 otherwise were satisfied here, the statute further provides that "any person furnishing services involving the towing and recovery of a vehicle shall have a lien for all normal costs incident thereto, ***if the person asserting the lien gives written notice within seven days of receipt of the vehicle by certified mail, return receipt requested, to all secured parties of record at the Department of Motor Vehicles.***"  Va. Code Ann. § 46.2-644.01.C (emph. supp'd).

60.    Shenandoah did not provide such written notice by certified mail, return-receipt requested.

61.    Therefore, Shenandoah never perfected any lien it might otherwise have on the Truck.

62.    Shenandoah has no right or justification to assert dominion and control over the Truck and its cargo, nor has it had such right or justification at any time.

63.    Shenandoah wrongfully asserted dominion and control over the Truck and its cargo by towing them from the scene of the Collision and impounding them, and by refusing to permit Klapec to retrieve the Truck or to offload its cargo.

64.    Shenandoah continues to wrongfully assert dominion and control over the Truck and its cargo by refusing to release them to Klapec unless and until Klapec pays more than $77,000 in towing and impoundment charges in connection with services that Klapec has never requested or desired.

65.    The Tractor and the Trailer were both deemed total losses following the Collision, with the Tractor having a salvage value of approximately $28,258.99, and the Trailer having a salvage value of approximately $8,888.00.

66.    Because Shenandoah is wrongfully in possession of the Truck and has refused to release the Truck to Klapec unless Klapec pays the wrongful and erroneous charges demanded in the Invoice, Shenandoah has converted the Truck for Shenandoah's benefit and gain.

67.    Klapec has been damaged by Shenandoah's conversion of the Truck in the amount of $37,146.99, representing the value of the Truck, and the interference with Klapec's contractual relationship with its customer whose property Shenandoah has wrongfully seized and retained.

68.    For at least this reason, judgment should be entered against Shenandoah in Klapec's favor.

SECOND CAUSE OF ACTION – CONVERSION OF THE TRUCK'S CARGO

69.    Klapec hereby restates the allegations set forth in Paragraphs 1-68 of this Complaint as if those Paragraphs were re-alleged verbatim here.

70.    Even assuming *arguendo* that Shenandoah holds a valid lien on the Truck (it does not), Shenandoah does not have such a lien against the Truck's cargo, and Shenandoah is wrongfully in possession of the cargo.

71.     As noted herein, Code of Virginia section 46.2-644.01 provides, in part, that "[e]very keeper of a garage and every person keeping any vehicles shall have a lien *upon such vehicles* for the amount that may be due him for the towing, storage, recovery, and care thereof, until such amount is paid."  Va. Code Ann. § 46.2-644.01.A (emph. supp'd).

72.     That statute further provides that "[a]ny lien created under this section *shall not extend to any personal property that is not attached to or considered to be necessary to the proper operation of any motor vehicle*, and it shall be the duty of any keeper of such personal property to return it to the owner if the owner claims the items prior to auction."  Va. Code Ann. § 46.2-644.01.E (emph. supp'd).

73.     The statute provides, as well, that "in the case of a truck or combination of vehicles, the owner . . . of the truck or tractor truck, shall be liable for the costs of the towing, recovery, and *storage of the cargo* and of any trailer or semitrailer in the combination."  Va. Code Ann. § 46.2-644.01.F (emph. supp'd).

74.     That statute makes clear, therefore, that the lien created under Code section 46.2-644.01 applies only to towed and stored vehicles, and not to any cargo aboard such vehicles.

75.     The statute's imposition of liability upon the owner of a tractor-trailer for the storage of cargo aboard the tractor-trailer does not create a lien upon the cargo.

76.     The cargo aboard the Truck, therefore, is not subject to a lien, and Shenandoah has no right to withhold the cargo.

77.     As a towing company registered with the TRIP program, Shenandoah is required to undergo certification that it is familiar with the requirements of state law applicable to towing and recovery operations under the TRIP program.

78. Accordingly, Shenandoah is aware, or reasonably should be aware due to the requirements of its certification for the TRIP program, of when the TRIP criteria are satisfied by a collision or a request for towing and recovery services.

79. Having such knowledge – either actual or constructive – Shenandoah could only have known that the Collision did not meet the TRIP criteria.

80. Because Shenandoah knew, or reasonably should have known, that the Collision did not meet the TRIP criteria, Shenandoah's decision to take possession of the Truck's cargo and retain possession of the cargo constitute the wrongful exercise of dominion and control over property for which Klapec can be held legally liable.

81. Shenandoah has wrongfully exercised dominion and control over the cargo out of malice, recklessness, and/or willful and wanton negligence.

82. Furthermore, even assuming *arguendo* that the conditions for creating a lien under Code section 46.2-644.01 otherwise were satisfied here, the statute further provides that "any person furnishing services involving the towing and recovery of a vehicle shall have a lien for all normal costs incident thereto, ***if the person asserting the lien gives written notices within seven days of receipt of the vehicle by certified mail, return receipt requested, to all secured parties of record at the Department of Motor Vehicles.***" Va. Code Ann. § 46.2-644.01.C (emph. supp'd).

83. Shenandoah did not provide such written notice by certified mail, return-receipt requested.

84. Therefore, Shenandoah never perfected any lien it might otherwise have on the Truck's cargo.

85. Klapec has requested that Shenandoah permit Klapec to offload the cargo, and Shenandoah has wrongfully refused.

86.     Shenandoah has converted the cargo.

87.     Klapec has been damaged by Shenandoah's conversion of the cargo in the amount of $100,000.00, for which Klapec is legally liable to its customer.

88.     For this further reason, judgment should be entered against Shenandoah in Klapec's favor.

<u>THIRD CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACT</u>

89.     Klapec hereby restates the allegations set forth in Paragraphs 1-88 of this Complaint as if those Paragraphs were re-alleged verbatim here.

90.     On January 24, 2022, Klapec was engaged in its regular course of business acting by and through its driver, Mr. Nichols, who was driving the Truck from Taylorsville, North Carolina, to Allentown, Pennsylvania, to deliver a cargo of plastic film skids to Lindenmeyer Monroe (the "Shipment").

91.     The Shipment was being made pursuant to a written agreement between Klapec and DM Trans, LLC ("DMT"), d/b/a Arrive Logistics, under the terms of which Klapec was to be paid $1,900.00 for delivering the Shipment.

92.     Following the Collision, Klapec has stood ready at all times to offload the Shipment from the Trailer and deliver it to Lindemeyer Monroe, as provided under Klapec's agreement with DMT.

93.     At all times relevant, Shenandoah has known, or reasonably should have known, that the cargo aboard the Trailer which Shenandoah is holding in its custody is cargo that Klapec was in the course of delivering to one of Klapec's customers when Shenandoah took possession of it.

94.     Shenandoah has no legal grounds or justification for refusing to allow Klapec to offload the Shipment and deliver it to Lindenmeyer Monroe.

95.     Shenandoah has wrongfully and tortiously interfered with Klapec's performance under Klapec's agreement with DMT, by wrongfully withholding the Shipment and preventing Klapec from delivering it to Lindemeyer Monroe unless and until Klapec agrees to pay the excessive, unreasonable, and unwarranted charges reflected in the Invoice.

96.     As a result of Shenandoah's wrongful and tortious interference with Klapec's performance of its agreement with DMT, Klapec has been damaged in the amounts of (i) $1,900.00, which it would have earned had it delivered the Shipment, and (ii) $100,000.00, the cargo's value for which Klapec has become legally liable to DMT.

97.     For this further reason, judgment should be entered in Klapec's favor and against Shenandoah.

FOURTH CAUSE OF ACTION –
BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(in the alternative)

98.     Klapec hereby restates the allegations set forth in Paragraphs 1-97 of this Complaint as if those Paragraphs were re-alleged verbatim here.

99.     Even if Klapec were unable to prove it has been damaged by Shenandoah's conversion of the Truck and/or its cargo, and by Shenandoah's tortious interference with Klapec's contract with DMT – and Klapec *has* been so damaged – Shenandoah has nevertheless breached the implied covenant of good faith and fair dealing with respect to the putative contract on which its invoice and service charges rest.

100.    Many of the charges set forth in the Invoice for its services are outrageously excessive and/or not collectible as a matter of law.

101.    The Invoice evidences a contract for towing, recovery, and storage services that Shenandoah has provided to Klapec which arose by operation of law when the State Police summoned Shenandoah to perform the Tow.

102.    In Virginia, every contract contains an implied covenant of good faith and fair dealing.

103.    A defendant breaches the implied covenant of good faith and fair dealing by, *inter alia*, acting arbitrarily, unfairly, and/or dishonestly.

104.    Among the charges listed in Shenandoah's invoice is an "adm fee" in the amount of $7,040.00.  (Exh. 1.)

105.    The purpose of the "adm fee," if any, is not stated in the invoice, whereas the purpose of other charges in the invoice is identified with at least some specificity.

106.    As a matter of law, the "adm fee" is not collectible.

107.    Similarly, the Invoice's charges for "set up fees," on-scene lighting, wireless communications, and the presence of a supervisor are not collectible.

108.    Additionally, the number of pieces of equipment deployed for the services reflected in the invoice is excessive and unreasonable.

109.    The amount of time in terms of man-hours reflected in the invoice also is excessive and unreasonable.

110.    Additionally, Code of Virginia section 46.2-1212.1 does not authorize Shenandoah to collect storage charges from Klapec but, rather, only charges for "the removal and subsequent disposition" of the Truck.  Va. Code Ann. § 46.2-1212.1.C.

111.    Therefore, even if Shenandoah held a valid lien against the Truck and its cargo – and it does not – the charges for which Shenandoah demands payment are unreasonable, excessive, and shocking to the conscience.

112.    Those unreasonable and excessive charges reflect Shenandoah's performance of the putative contract between it and Klapec in an arbitrary, unfair, and/or dishonest manner.

113.    For that reason, Shenandoah has breached the implied covenant of good faith and fair dealing in connection with the contract on which Shenandoah's demand for payment rests.

114.    Klapec has suffered damages as a result of Shenandoah's bad-faith performance of the contract putatively existing between it and Klapec, including, without limitation, loss of business revenue, being forced to pay for the cargo that Shenandoah is wrongfully withholding from Klapec, and incurring attorneys' fees and costs to enforce Klapec's rights with respect to Shenandoah's conduct.

115.    Klapec therefore respectfully prays that the Court enter judgment in its favor, awarding Klapec its damages caused by Shenandoah.

<u>FIFTH CAUSE OF ACTION – REQUEST FOR DECLARATORY JUDGMENT</u>
(in the alternative)

116.    Klapec hereby restates the allegations set forth in Paragraphs 1-115 of this Complaint as if those Paragraphs were re-alleged verbatim here.

117.    Even if Klapec were unable to prove it has been damaged by Shenandoah's conversion of the Truck and its cargo, and by Shenandoah's tortious interference with Klapec's performance of its agreement with DMT – and Klapec *has* been so damaged – the Court nevertheless should enter declaratory judgment in Klapec's favor, to prevent the loss of Klapec's property through a sale of it by Shenandoah pursuant to Code of Virginia section 46.2-644.03.

118.    Code section 46.2-644.03 provides, in part, that "if the value of the property [against which a lien is claimed under Code section 46.2-644.01] exceeds $25,000," the party claiming the lien, "after giving notice as herein provided," may "apply by petition . . . to the circuit court of the county or city, for the sale of the property."  Va. Code Ann. § 46.2-644.03.

119.    Because Shenandoah erroneously claims a lien against the Truck and its cargo pursuant to Code section 46.2-644.01, Shenandoah potentially could petition to sell the Truck and the cargo as provided under section 46.2-644.03.

120.    For the reasons alleged above, Shenandoah does not hold a valid lien against either the Truck or its cargo.

121.    Thus, if Shenandoah were to petition the Circuit Court of Shenandoah County to sell the Truck and/or the cargo, and the court were to grant such a petition, Klapec would be wrongfully deprived of its property.

122.    Furthermore, as Shenandoah does not hold a valid lien against the Truck or the cargo, even a purchaser in good faith of the Truck or the cargo would lack valid title to them, or at the very least there would be a cloud on that title.

123.    In order to prevent Klapec from sustaining damages through the loss of its Truck and the cargo, therefore, and to avoid an invalid or defective title from being passed to a bona fide purchaser of the Truck or the cargo, the Court should enter declaratory judgment in Klapec's favor, holding that Shenandoah does not have a valid lien against the Truck and the cargo, and that the Truck and the cargo shall be returned promptly to Klapec.

SIXTH CAUSE OF ACTION –
<u>ALTERNATE REQUEST FOR DECLARATORY JUDGMENT</u>
(in the alternative)

124.    Klapec hereby restates the allegations set forth in Paragraphs 1-123 of this Complaint as if those Paragraphs were re-alleged verbatim here.

125.    Even assuming *arguendo* that Shenandoah held a valid lien against the Truck and its cargo (and it does not), and that Shenandoah has not breached the implied covenant of good faith and fair dealing in the performance of the putative contract on which Shenandoah's charges

are based (it has), many of the charges set forth in Shenandoah's invoice for its services nevertheless remain outrageously excessive and/or not collectible as a matter of law.

126.    Among the charges listed in Shenandoah's invoice is an "adm fee" in the amount of $7,040.00.  (Exh. 1.)

127.    The purpose of the "adm fee," if any, is not stated in the invoice, whereas the purpose of other charges in the invoice is identified with at least some specificity.

128.    As a matter of law, the "adm fee" is not collectible.

129.    Similarly, the Invoice's charges for "set up fees," on-scene lighting, wireless communications, and the presence of a supervisor are not collectible.

130.    Additionally, the number of pieces of equipment deployed for the tow, recovery, and clean-up reflected in the invoice is excessive and unreasonable.

131.    The amount of time in terms of man-hours and equipment deployment reflected in the invoice also is excessive and unreasonable.

132.    Therefore, even if Shenandoah held a valid lien against the Truck and its cargo – and it does not – the charges for which Shenandoah demands payment are unreasonable, excessive, and shocking to the conscience.

133.    Accordingly, the Court should enter declaratory judgment against Shenandoah and in Klapec's favor, holding that the full amount set forth in the invoice is not collectible and that Shenandoah is reasonably due only a reduced sum for the work on which the invoice is based.

WHEREFORE, Klapec respectfully prays that this Court enter an Order, ADJUDGING, ORDERING and DECREEING that:

(1)    Shenandoah shall pay Klapec an amount equal to or greater than THIRTY-
       SEVEN THOUSAND ONE HUNDRED FORTY-SIX AND 99/1000

DOLLARS ($37,146.99) in compensatory damages for Shenandoah's conversion of the Truck; and

(2)    Shenandoah shall pay Klapec punitive damages in the amount of THREE HUNDRED-FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) based on Shenandoah's conversion of the Truck; and

(3)    Shenandoah shall pay Klapec an amount equal to or greater than ONE HUNDRED THOUSAND DOLLARS ($100,000.00) in compensatory damages for Shenandoah's conversion of the Truck's cargo; and

(4)    Shenandoah shall pay Klapec punitive damages in the amount of THREE HUNDRED-FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) based on Shenandoah's conversion of the Truck's cargo; or

(5)    Shenandoah shall pay Klapec an amount equal to or greater than ONE HUNDRED ONE THOUSAND NINE HUNDRED AND NO/100 DOLLARS $101,900.00 in compensatory damages for Shenandoah's tortious interference with Klapec's agreement with DMT; and

(6)    Shenandoah shall pay Klapec punitive damages in the amount of THREE HUNDRED-FIFTY THOUSAND AND NO/100 DOLLARS ($350,000.00) based on Shenandoah's tortious interference with Klapec's performance of its agreement with DMT; or

(7)    Alternatively, Shenandoah shall pay Klapec an amount equal to or greater than TWENTY-SEVEN THOUSAND SEVEN HUNDRED FORTY AND NO/100 DOLLARS ($27,740.00) in direct compensatory damages for Shenandoah's breach of the implied covenant of good faith and fair

dealing, as well as an amount equal to or greater than ONE HUNDRED THIRTY-NINE THOUSAND FORTY-SIX AND 99/100 DOLLARS ($139,046.99) in consequential compensatory damages; and

(8)     Klapec is awarded pre-judgment and post-judgment interest; or

(9)     Alternatively, declaratory judgment is entered in Klapec's favor, that Shenandoah does not hold a valid lien against the Truck and its cargo, and that Shenandoah shall release the Truck and its cargo immediately upon entry of final judgment in this action; or

(10)    Alternatively, declaratory judgment is entered in Klapec's favor, that the amounts set forth in Shenandoah's invoice are unreasonable and excessive, and that Klapec's obligation to pay the invoice, if any, shall be limited according to the evidence presented at trial, as a matter of equity; and

(11)    Klapec is awarded its costs of suit; and

(12)    Klapec is awarded all such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**KLAPEC TRUCKING CO.**

By:  SETLIFF LAW, P.C.

_____/s/ Kevin T. Streit_____
Of Counsel

C. Stephen Setliff (VSB No. 27882)
Kevin T. Streit (VSB No. 45024)
SETLIFF LAW, P.C.
4940 Dominion Boulevard
Glen Allen, Virginia 23060
(804) 377-1260
(804) 377-1280 (facsimile)

ssetliff@setlifflaw.com
kstreit@setlifflaw.com
*Counsel for Klapec Trucking Co., Inc.*